Case number 14-5276, United States of America v. Jason Anthony Carter, arguments not to exceed 15 minutes per side. Mr. Leonard for the appellant. If I could reserve four minutes please for rebuttal. Thank you very much. My name is Dave Leonard. I represent Jason Carter. As the court knows, Mr. Carter was convicted of conspiracy to manufacture methamphetamine and also creating a substantial likelihood of substantial bodily injury during the manufacturing process of methamphetamine. This is one of those cases where we have all the courtroom observers and they come up to you after the closing arguments and say you've done a great job, there's no way the jury will convict. And of course we've all been there and you get convicted with a little fanfare. And that's exactly what occurred in this case. I have three issues today. The first issue is sufficiency of the evidence. I know the three of you like to hear those all the time and we have a great likelihood of success on that issue. Nonetheless, I think it's important to bring up a few of the issues in sufficiency to sort of help me along the way with 404B and also the issue concerning the sentencing in this case. Concerning the sufficiency of the evidence, I understand what my burden is in this court, but this was sort of an interesting case. We had two co-defendants testify against my client, Mr. Carter. These were the Stedmans. Both convicted felons. Ms. Stedman had just recently, within a few weeks of this methamphetamine lab explosion, been released from federal custody actually. And she was at it again. At the end of my cross-examination of Mr. Stedman, he pretty much admitted that he told my client, and as the court may recall, my client was present during a pretty bad explosion that occurred at an apartment complex in Tennessee, northeast Tennessee. Mr. Stedman basically admitted that he had told my client that there was a grease fire in the kitchen and to get out. And he pretty much, as I've said in the brief several times, let the cat out of the bag. Regardless of his admission that he was not forthright and forthcoming with my client, my client was convicted. If you look at the testimony, you look at the credibility of these witnesses, and I'm talking about the two co-defendants in this case with their prior convictions and their prior lying to the authorities during the investigation of this case. And then if you look at Mr. Stedman's admission during a cross-examination, it's briefed adequately in my brief, I believe, there can be no way that any rational and trier fact could find my client guilty of this offense. And that was one of those on cross-examination that we all like where we end with a strong question. He admitted once again that he lied to my client about the origin of the fire. Your client had bought a box of pseudoephedrine and just kind of stumbled into this whole apartment with no knowledge, whatever. Sure, sure. If you look at the proof in this case, there was testimony concerning the fact that the Stedmans were basically homeless. They did have the apartment, but they were coming back from some bad patches and that my client helped them get food. There are various questions asked concerning my client's purpose of being at the apartment complex, and there was some testimony concerning the fact that the Stedmans were there to cook him a meal to thank him for his service. As the court knows from looking at this brief, my client worked at a place called the Haven of Mercy, I believe it was, Haven of Rest. It was a home for homeless individuals, and it was sort of a meal house as well for individuals without financial resources. My client did purchase the box of pseudoephedrine. There was some discussion with Detective Graham concerning the pseudoephedrine, and my client at first, of course, did not tell the officer investigating the case about pseudoephedrine, but nonetheless he did purchase it. He told the officer after the issue came up about the ingredients of methamphetamine exactly where he purchased it. How much did he purchase? One box. One box. 2.4 grams of pseudoephedrine. What is that, 12 tablets or something? Yeah, 24 tablets, enough to make a small amount of methamphetamine, certainly not enough to make what... Something that someone with a cold might buy. That's correct. That is correct. There was also testimony from these co-defendants that my client was the ringleader in all this, that he went to all these various businesses, including Walmart and Lowe's, to purchase the various products that you need to manufacture methamphetamine, and this was the one-pot method. We can do it. There was testimony concerning people actually manufacturing this in bathrooms, so it's not like a lab that we see on these TV shows and that sort of thing, and the officer was not able to locate any video from Walmart. We know Walmart likes to videotape their customers, and there was simply no videotape found with my client purchasing batteries or fish tank hose or anything else needed to manufacture methamphetamine. What was the last thing? Fish tank hose. They use it for the breather for the one-pot method. You have to relieve the pressure off of the methamphetamine pot. That's correct. Concerning the 404B evidence, we're sort of, the appellants are hitting on Judge Greer today a little bit. Judge Greer said it was a close case, and he also told Ms. Kearney Quill in the AUSA handling this case that he would not want to be up in the Sixth Circuit defending this on appeal. He said that point blank. It's almost as if the 404B became an element of the offense. In my opinion, at least, this is not a harmless error case. 404B in this particular case, he did order that one part of what Ms. Kearney Quill wanted to come in would not come in, but what he allowed was a co-defendant who had entered a plea agreement with the government to testify concerning the 404B. I understand the various elements this court looks at in determining the admissibility of 404B evidence. But what Judge Greer allowed was a co-defendant without telling us when it occurred. And if you look at his testimony also, it's unclear whether he actually observed anything concerning my client supposedly selling at this homeless shelter the strips, the Suboxone strips. If your characterization of Judge Greer's attitude towards ruling this way, one would think that he felt bound by some case of ours or the Supreme Court to rule that way. Is that the case? Well, basically, his position is, I've practiced in front of Judge Greer for a long time, that it's a rule of inclusion and that's sort of the way he treats it. It's very common with Judge Greer to allow 404B evidence to come in. The DeJesus case I argued in front of this court also, it dealt with another defendant, but he allowed it to come in and this court didn't like that. Your reading is that he'd just allow it in and if you lose on appeal, the government's up to the government. That's the way I take it. That's the way I take it. Judge Greer's a good judge. I enjoy practicing in front of him, but when it comes to 404B, unless it's something very extreme, it's coming in. Because time and time again, he's told us as the defense bar that it's a rule of inclusion, which I understand it is. But in this particular case, it was a different type of drug. It had, in my opinion at least, no connection between this supposed methamphetamine production and some instance of my client supposedly selling suboxone strips that we don't know when it occurred. The case law that I generally have seen concerning 404B out of this circuit deals with very similar drugs. You know, marijuana versus marijuana conspiracy. Cocaine versus cocaine conspiracy. And while, you know, we try to find... ...could be the criterion, as I understand it, but I want to be educated, is that if it's similar, it shows that he knew what he was doing. So that it shows that he actually intended to do it, because intent is the big issue here. That's correct. If he thought that he buys the Sudafed and gives it to somebody, it's either legal or not, depending on why he did that. That's correct. If he did it so that they could cook something, then it was illegal what he did. But if he did it so that they could cure their cold, it's not illegal. So it all depends on... So if... The trouble I have with relying on how close it was to the same crime, it starts to... It could look like that's propensity. It's like, well, he did this crime, this exact crime before, so it's more likely that he's willing to do that exact kind of... And that's the concern you always have with 404B, obviously. In this case, in all my cases... That doesn't even work whichever way you do it, because it wasn't very similar. That's correct. And then, if you look at Mr. Stedman's testimony, he... I think it's dangerous to allow a co-defendant with a lot to lose to testify concerning 404B. I'm not saying it can't happen. I'm just saying that it's dangerous. And I think when we have a co-defendant offering 404B, I think we need to look at that more closely, especially this co-defendant concerning his... Why is that? I'm trying to follow your thought. Why is that? This person had the most to lose. It's not like we had a situation where... The most to lose? Mr. Stedman. He was a... I mean, he was looking at up to 30 years. He had a substantial prior record. Why is the co-defendant being the propagator of the evidence one way or the other for 404B purposes? Why does that bother me? You said it's particularly troublesome. It is, because... Why? I'm trying to understand. Because this co-defendant had a lot to lose. And he had already been proven by his own admission that he was a liar. And if you look at that and you look at his testimony, where it's not like it's an officer... Not only to how relevant it was, but whether it happened at all. That's correct. That's exactly right. That's the first prong of the test this court looks at is whether it happened at all. Concerning, and I'm almost out of time, concerning the third issue, the sentencing issue, if the court would look at the testimony of Detective Graham, I don't think it's clear at all that any children were present. He was told by someone, and it's not exactly clear, that there was a family with minor children present in this apartment complex. It was a six or seven unit apartment complex. And because the judge felt that the burden had been met by the government proponents of the evidence, the court increased the offense level by six units because of the alleged presence of a child. And I would simply ask the court to look at my brief, look at the record concerning that issue, and look at the testimony of Detective Graham that I set out in my brief. Thank you very much. Thank you. May it please the court. My name is Luke McLaurin, and I'm here on behalf of the United States. The defendant's convictions and sentence in this case should be affirmed because the government presented ample evidence for any rational juror to convict the defendant of the charged offenses, and because the district court, one, did not abuse its discretion in admitting the evidence of the defendant's prior drug dealings, and two, did not clearly err in determining that children were present at the apartment complex on the day it exploded, such that a sentencing enhancement for endangering the lives of minors was appropriate. I want to begin with the sufficiency of the evidence issues. I think the defendant talks about how this was somehow a close case for the jury, but in the government's view, there was quite overwhelming evidence of the defendant's guilt. You had testimony from two separate co-conspirators describing how a defendant knowingly and intentionally joined this conspiracy to manufacture meth with the purpose of the plan to then sell small amounts of it to make money to help the Stedmans pay their rent. That was the plan and the purpose of the conspiracy. There was testimony from two separate co-conspirators. So the defendant was going to be just beneficent here and participate in this conspiracy just to help the Stedmans, or was he trying to make money on his own? The testimony was that the money that was made from the drug sales, some of it was going to go to the Stedmans, some of it was going to go to the defendant himself, so he was going to benefit financially from this. That was the testimony, and this court's case law is very clear that even uncorroborated testimony from a co-conspirator is enough, but we have more than just uncorroborated testimony. We have the fact that there are pharmacy records that confirm that the defendant bought the wall-fed tablets, the very wall-fed tablets that the co-conspirators testified they used, the very wall-fed tablet package that was found at the scene of the crime. He bought that on the day of the offense at a pharmacy very close to where the offense occurred. And then when he was confronted about that fact, he lied to police officers. He initially said, no, no, no, I didn't ever buy any pseudoephedrine. Then he comes back and says, no, I did buy it, but I swear I bought it a week before. Well, that was contradicted by pharmacy record evidence. All that together corroborates the testimony from the co-conspirators, along with the fact that you had several witnesses who saw the defendant at the scene of the crime, on the day of the explosion, rushing away from the apartment right after the explosion. We submit that in light of all of that evidence, any rational juror could easily have convicted the defendant. Now, I want to address a point the defendant made. He said somehow there was some big admission or that James Stedman let the cat out of the bag in his cross-examination. What James Stedman actually said, and this is on page ID 519, is when he was asked about what he told the defendant, he didn't say, no, I told the defendant that it was a grease fire. He said, I told him, referring to the defendant, I told the cops it was a grease fire so that they wouldn't know that it was meth. That's what he told, that's what he said on cross-examination. That is hardly a smoking gun. If anything, that makes the defendant look more culpable. So I don't see anything in this cross-examination that would have been a big aha moment, that any rational juror would have had to look at and say, well, we can't convict this individual. In light of the overwhelming other evidence, we submit that these convictions should be affirmed. Now, turning to the 404B issue, I first wanted, there's several parts to the 404B analysis, and the defendant focuses primarily on the first part, whether there was enough evidence for the court to believe that these prior bad acts had actually occurred. And he says, well, there wasn't any credible evidence that the James Stedman, the person who testified about it, really had no idea what he was talking about. That's blatantly contradicted by the record. I'll point the court to page ID numbers 485 and 486. That's where this testimony came in at trial. James Stedman testified that not only did he see these prior drug sales, he was the recipient of drugs in one of those drug sales. That is sufficient evidence for the jury to conclude that those drug sales did actually occur, and sufficient evidence for Judge Greer to find that there was enough evidence that these drug sales actually happened. Counselor, is there a time frame for that in the record? Yes. The time frame, and it helps to explain what the testimony was. The testimony was that Mr. Stedman stayed at this place, the Haven of Rest, from December of 2011 until about a month before the events occurred in this case. So that would have been July of 2012. His testimony was that he saw the defendant sell these Suboxone strips on several occasions during that time period. He could not specify precisely it was on July 25th or March 3rd or whatever. He could not specify the very precise dates, but he specified that it occurred several times over this period at which he was at Haven of Rest. So that gives us a span of about, at most, eight months prior to this instant offense. And so that is well within the time period that this court has found to be relevant. In fact, I should back up. With regard to 404B evidence, this court has explicitly stated that there is no absolute time requirement, that a prior offense has to occur no later than so many years or so many months. But at most, eight months before the charged offense is well within periods that this court has found appropriate. The key question in the 404B analysis is, is this evidence probative of the defendant's intent? And in looking at that, the tests that this court has used, which is cited most frequently in the Haywood case, is whether the events are substantially similar and reasonably near in time. We've already discussed the reasonably near in time element, which we believe is met, and they are substantially similar because what the court is supposed to do is look at what is the very specific offense which the defendant is charged and what the government had approved the specific intent for. Here, the conspiracy that was charged and that was being proved at trial is that these individuals agreed to manufacture meth with the plan that they were then going to sell small amounts of it. What this prior acts evidence showed is that the defendant had experience selling small amounts of drugs at the Haven arrest. He had a mechanism, he had a structure set up, he had the ability to do this. This got to his motive for why he, and his knowledge of this conspiracy. That was something the government had to prove that he both knew of the conspiratorial objective and knowingly joined in it. Let me explain why that puzzles me. There's this idea in the rules that evidence shouldn't be admitted to show propensity. Is that right? Absolutely. It's counterintuitive. I think most people, I certainly, in just judging everyday life, if somebody had done something before and now it's question is whether that person had done it again, the fact that he'd done it before would suggest to me, if I was on the fence, that would tip me over. It would be relevant in that sense. But the evidence law says no, you can't admit it for that purpose. Is that right? That's right. What's the danger? I believe the danger is, and the reason why we have 404B1, is to make sure that somebody is not convicted on the theory of once a bad guy, always a bad guy. That's what we're trying to avoid. Once a bad guy, you could have done it before and not have always been a bad guy, but the fact that you did it before suggests that it's more likely, you're willing to cross the line before, that shows a willingness, generally, to cross the line in the future, right? That is the idea, and I think that the folks who crafted the rules of evidence made a policy judgment that that kind of evidence is not the kind of evidence that we want juries to rely on to convict individuals. And if you accept that, I find it hard to accept, candidly, but we're bound by the law, right? So the law says you can't do that. I don't see how the fact that you sold a different kind of drug in a different context, it does have that propensity inference to it. It's pretty strong, but I don't see how it has any other, I don't see how it shows that he had the intent to do it this time. The way that selling Sudafed before, and presumably later finding out that it was used to make meth, would suggest that when you bought it now, you had the intent to have that happen to the Sudafed you bought now. There's nothing like that here. So I'm not seeing how there's anything other than the propensity inference that can be drawn from this. And you can say, well, I don't want to call it a propensity inference, I want to call it an intent, but it's an intent that's derived from propensity, or else what is it derived from? I can't see what it's derived from other than propensity. Well, I think it's best to think about this evidence as being related to intent in the sense that it shows his motive, and it shows his opportunity and ability to join this controversy. The only way it shows those things is that he did it before. Well, no, I think it shows his motive in the sense that he has... He's like an evil, he knows he's sold drugs before, so he's liable to sell it. It does strongly show his motive because of the propensity inference. He did it before, he doesn't mind selling drugs, he's a bad guy. Now he's doing it again. He must be, because he did it before. It makes sense to me, but it sure seems like propensity. Your Honor, I'll be the first to admit that these are things that are hard to parse, and unfortunately that's what the rule asks courts to do. Is there evidence of where he was intending to sell this stuff from this time? The evidence, my understanding is that he was intending to sell it at the Haven of Rest, but the clearest testimony about what the conspiratorial objective is, is on page 455, page ID 455 of the transcript that's in the Stedman's testimony, about what their objective was, is that they were going to manufacture this in the Stedman's apartment, and then the defendant was going to sell it for them, was going to sell the meth that they were producing. They were also going to take some of it themselves. They were all going to take some of it and use it, but then they were also going to sell it. And I think what this showed is that the defendant had a structure in place in which he could sell the small amounts of meth that they were going to take. I think that was the substantial similarity. And I would point out to the extent Judge Riders that... Even if that does demonstrate propensity, does it demonstrate something in addition? Yes, I think it demonstrates a motive. It demonstrates the opportunity and his ability to knowingly join this conspiracy, and I think that that's what Judge Greer was focused on. And I would point out to the court that the court does review this under an abusive discretion standard, and the Fifth and Eleventh Circuits have very helpfully explained that what that means in the context of the evidentiary decisions is not whether this court would have reached the same conclusion where it's sitting as the trial judge. The question is did the... That's a little bit... I mean, that's a typically strong argument, but perhaps not as strong in the context of this case where the district judge appears to be punting a little bit. Well, I think what you have is the district judge was trying to, I mean, look at these very difficult issues and trying to parse it, and as we have... I admit this is a very difficult question. Judge Greer thought it was a difficult question. I think the question is did Judge Greer go outside the bounds of the law? Assuming that we have a little discretion in how strongly we defer to judges, if a judge conveys the idea that the judge finds it difficult to see but is willing to let the lawyer chance it, is this a little bit less than the... arguably entitles him to a little bit less deference? I would argue that the flip side should occur here, Judge, that this is not a situation where the district court is simply rubber stamping what the government is offering. The district court is genuinely struggling with these issues. I think if you look at this transcript, the district court... Judge Greer, he's very clearly struggling with this. He is not comfortable with it. He's struggling with it. He feels, though, that the law allows this and feels bound to do this. And as far as we're aware, there's no case law that explicitly says you can't... that in order for this evidence to be relevant, you have to have the same drugs or you have to have the same method of dealing or method of violating the drug laws. We would submit that... sales not be propensible, not be admissible under this analysis. It seems like any time you sell drugs before, then you get to show that he's a drug salesperson. They're accused of making drugs for sale. I can't see how you would distinguish that once we decide this case in your favor, then the whole limit is gone as far as I can see. Any capable lawyer, and probably a few incapable ones, could make the argument that this is to prove intent and motive, and it's so fuzzy that it's impossible to distinguish, and so therefore it's admissible. I mean, it's a different kind of drug. We don't know where he's going to sell it. It's just the fact that he sold drugs. The fact that he sold drugs can be brought whenever a drug crime is alleged. You're a drug dealer. That is not the rule that we're asking this court to adopt. How would some situation that didn't pass that test be different from this one? It would involve a very different specific offense and a different specific prior. What we're asking the court to do is look at the very specific facts of this offense and the very specific nature of the prior crime. We're not asking the court to advocate a rule that says, well, any time you have any sort of prior drug crime and you're charged with a drug crime, good to go for 404B. That is precisely not what we're asking the court to find. We're not asking the court to adopt that rule. What's the difference? The difference here is that you're looking at the very specific nature of what this defendant did. His sales, but it was the similarity of the offenses, that he was small amounts, he was distributing small amounts, and he was being charged with a conspiracy to join. I would just simply emphasize that even if the court does feel that Judge Greer got this call wrong, it should nevertheless affirm the defendant's convictions because the omission of that evidence was harmless in light of the overwhelming other evidence of the defendant's guilt in this case. We would also point out the limiting instruction that Judge Greer gave immediately after this evidence was introduced, which minimized any potential harmful impact it might have had. We think in light of that, in light of all the other evidence that was presented of the defendant's guilt, there should be no concern in this court's mind that this 404B evidence, even if it shouldn't have been admitted, sway the jury's verdict in any way. Thank you, counsel. Thank you. Do I have any time left? I hope I have about two minutes. Thank you. In the government's brief, they cite United States v. Matthews. It's an 11th Circuit case. Quote, virtually any prior drug offense is primitive of the intent to engage in a drug conspiracy. And that was your question, Judge Rogers. The government does want that broad application of 404B. The case law cited by the government in this brief also deals with similar drugs, in the 6th Circuit at least, marijuana sales, marijuana conspiracy, meth possession, meth conspiracy. They go outside the district, or our circuit rather, and look at other circuits' case law concerning different types of drugs, methamphetamine versus marijuana. And it appears as though the 11th Circuit has a very broad application, and the other circuits, including the 5th, as well. I would ask the judges to look at page, ID page numbers 519 and 520, concerning Mr. Stedman's testimony about what he told Mr. Carter about the Grease Fire, and specifically page 520 concerning my cross-examination of him about when he finally told him the truth. The other thing I think this Court should look at is, and I neglected to advise the Court of this, the Codefense would have us believe that this just happened, this one instance on August 28th, I believe, was the relevant date. But there was clear testimony from other occupants of the apartment complex that they had been smelling the telltale signs of methamphetamine production for the week prior to this. And that sort of goes along with my argument concerning not only the sufficiency, but also the 404B as well, is that this simply became an element of the offense. When the jury saw and heard that my client supposedly sold the suboxone, that was it. It was it. You're exactly right. It became a propensity. And nothing more, nothing less. Judge Greer never dealt with the prejudicial effect that this could have on my client. He sort of glossed over that. And you have the transcript. And concerning the harmless error, if you look at the overall proof of this case, including the testimony of Mr. Stedman and the testimony of the other occupants of the residence, that this had been going on for a week, despite the testimony of the Stedmans, it's not harmless error. Thank you very much. Thank you, Counsel. Case will be submitted.